UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUIS WILBON,                                    Case No. 07-12780

    Petitioner,                    Avern Cohn
v.                                               United States District Judge

KEN ROMANOWSKI,                                  Michael Hluchaniuk
                                                 United States Magistrate Judge

    Respondent.
_____/

# REPORT AND RECOMMENDATION
## PETITION FOR RELIEF UNDER 28 U.S.C. § 2254

## I.  PROCEDURAL HISTORY

Petitioner Louis Wilbon filed the present action on July 3, 2007, pursuant to

28 U.S.C. § 2254.  (Dkt. 1).  An answer to the petition was filed on January 10,

2008, which claimed, among other things,  that two of the eight issues raised in the

petition were unexhausted.  (Dkt. 7).  A reply to the answer was filed by petitioner

on January 25, 2008, as well as an amended petition which dropped the two issues

that respondent had claimed were unexhausted.  (Dkt. 10).  The amended petition

was answered on July 1, 2008.  (Dkt. 17).  Petitioner filed a "rebuttal" to

respondent's answer on July 8, 2008.  (Dkt. 18).  Petitioner filed a second

"rebuttal" on July 16, 2008.  (Dkt. 19).  The case was referred to the undersigned

on January 5, 2009, for all pretrial proceedings.  (Dkt. 24).  On May 19, 2009,

petitioner filed a document entitled "judicial notice" which appears to be merely additional argument in support of the petition but also raises a new argument regarding the statutory qualifications of the trial judge. (Dkt. 29). In that petitioner did not have leave of court to file this pleading, it will not be considered. Similarly, the document petitioner filed on December 15, 2009, styled as a request for the court to take judicial notice, will not be considered in that it was also filed without leave of court. (Dkt. 34).

For the reasons set forth below, the undersigned **RECOMMENDS** that the petition for writ of habeas corpus be **DENIED** for the reasons stated below.

## II.    FACTUAL BACKGROUND

A jury in Kent County, Michigan returned a guilty verdict against petitioner on January 11, 2005, following a trial that had begun on January 5, 2005. By their verdict, the jury had convicted petitioner of larceny by false pretenses in violation of Mich. Comp. Laws § 750.218(5)(a). The evidence presented during the trial reflected that in 2000, a refund check was sent to petitioner at the address of 462 Stonehedge, Kentwood, Michigan, by Ameritech in the amount of $33.03. The account the check was drawn on was closed in 2002. (1/6/05 Tr., pp. 72-73). Petitioner was incarcerated for a period of time and was released from custody on December 26, 2003. (1/10/05 Tr., p. 47). On January 5, 2004, petitioner opened a savings account at the LSI Credit Union in Kentwood, Michigan with a deposit of

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

$10.00.  (1/10/05 Tr., pp. 60-61).  The account was opened at approximately 9:46

a.m. at the "central" branch.  (1/7/05 Tr., p. 29).  Approximately a 10-15 minute

drive from the "central" branch of the credit union was another branch of the same

credit union that will be referred to as the "southeast" branch.  (1/7/05 Tr., p. 23).

On January 5, 2004, at approximately 1:55 p.m., an individual deposited a check in

the amount of $60,000.03 at the "southeast" branch of the credit union into the

account in petitioner's name that had been opened earlier that day at the "central"

branch.  (1/7/05 Tr., p. 30).  The $60,000.33 check was really an altered version of

the Ameritech refund check that had been sent to petitioner three years before.

(1/6/05 Tr., pp. 75-76).  The person who deposited the check provided a driver's

license in petitioner's name and was described as a tall, thin, "black male" with

freckles on his face.  (1/6/05 Tr., pp. 49, 52-54).   The teller who conducted the

transaction did not identify petitioner as the person making the deposit.  (1/6/05

Tr., p. 52).

At approximately 2:14 p.m. on that same day, a person at the "central," or

main, branch purchased a cashier's check in the amount of $40,000 from the

proceeds in the account in petitioner's name and also withdrew $2,000 in cash.

(1/6/05 Tr., pp. 86-88).  The person who obtained the cashier's check and the cash

furnished identification in the name of petitioner and was described as a tall, "kind

of thin," black man with freckles on his face.  The teller who processed that transaction identified petitioner as the person who got the check and cash.  *Id*.

At approximately 2:45 p.m. that day, the $40,000 cashier's check was re-deposited into the same account at the "central" branch and two other cashier's checks were issued from the account.  One of those checks was in the amount of $13,400, payable to Louis Wilbon or Messina Imports and the other was in the amount of $12,000 and it was payable to Louis Wilbon.  The teller who processed this transaction had no recollection of the events, although she was able to describe what happened based on her review of the documents.  The teller testified that she checked the identification of the person conducting the transaction based on her standard practice in such circumstances.  (1/6/05 Tr., pp. 99-104).

The $13,400 check was used by petitioner to purchase an automobile and the $12,000 check was deposited into an account at the Fifth Third Bank in petitioner's name.  (1/7/05 Tr., pp. 81-82).  The account at Fifth Third was drawn down to a little over $400 by January 23, 2004.  (1/6/07 Tr., pp. 111-12).  The following day, January 6, 2004, a $2,500 cash withdrawal was made from the LSI account, at the "southeast" branch, at approximately 2:23 p.m.  On January 8, 2004, a cashier's check was issued payable to Parris Motors in the amount of $2,468 and a cash withdrawal in the amount of $1,500 was made at the "central" branch.  On January 9, 2004, a $2,000 cash withdrawal was made at the "southeast" branch.  That day

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

the credit union learned that the $60,000.33 check had been drawn on a closed

account and the credit union attempted to stop payment on the $2,468 cashier's

check, but they were required to reimburse Paris Motors who had already sold a

car to petitioner based on payment related to the cashier's check. (1/7/05 Tr., pp.

40-42). The credit union ended up with a loss of $40,864.25 resulting from these

transactions. *Id.*

The events were brought to the attention of a fraud specialist for the credit

union who began to investigate the matter. She attempted to contact petitioner as

part of her investigation, but was initially unsuccessful. At one point, however,

petitioner left a voice mail message for her stating that he had to go out of town to

get the money for the credit union and he would provide her with the money on his

return. (1/7/05 Tr., pp. 44-45).

The fraud specialist at the credit union turned the investigation over to the

police. The police investigation was primarily conducted by Det. David Peuler of

the Kentwood Police Department. Det. Peuler met with various witnesses as part

of his investigation and also interviewed petitioner while petitioner was lodged at

the jail. (1/7/05 Tr., p. 88). During the interview at the jail, petitioner denied

actually presenting the altered check for deposit but did admit to knowing the

check had been altered and then deposited and also admitted to all the other

transactions associated with the credit union. Petitioner did not mention anything

to Det. Peuler about winning money at a casino during the interview regarding the credit union account. (1/7/05 Tr., pp. 99-101). The prosecution's case concluded with a stipulation as to a prior conviction of petitioner for the offense of bank fraud which was admitted to show intent and knowledge on the part of petitioner. (1/10/05 Tr., p. 3).

The defense consisted of the claim that petitioner did not know that the altered check had been deposited into the account that he acknowledged opening, that the funds that were deposited into the account were winnings that petitioner had from the casino, that Det. Peuler was an organized crime figure who was out to get petitioner and that one of the tellers from the credit union was an ex-girlfriend of petitioner's brother who perhaps had a motive to fabricate her testimony against petitioner.

## III.   STATE PROCEDURAL HISTORY

Petitioner had been initially charged with the state criminal offense in early 2004. Petitioner was a federal prisoner at the time of the initial charge and had to be transferred from federal custody to state custody on February 25, 2004. (12/20/04 Tr., p. 9). The state court proceedings were delayed at an early stage based on the request of petitioner. *Id.* The case was initially scheduled for trial in August of 2004 and adjourned due to a schedule conflict for Det. Peuler who requested the adjournment so he could attend the wedding of his daughter. The

trial was rescheduled for November of 2004 and adjourned again, this time based on the medical needs of a critical witness for the prosecution. (12/20/04 Tr., pp. 10-11). These two adjournments were not memorialized on the state court records at the time they were ordered, but the circumstances surrounding the adjournments were reflected in the state court record on December 20, 2004, when the trial judge recounted the history of the adjournments as part of his ruling on the defense motion to dismiss based on a claimed violation of the Interstate Agreement on Detainers. (12/20/04 Tr., pp. 7-13). The trial judge denied the defense motion finding that there was "good cause" for the adjournments and that the defense had not demonstrated any prejudice as a result of the adjournments of the trial dates. *Id*. The trial judge issued a written order dated December 27, 2004, in which he addressed the issues, in somewhat greater detail than he had addressed them at the hearing on December 20, 2004, and confirmed the finding that the adjournments of the trial had been based on "good cause" and that petitioner had not shown any actual prejudice from the delays. (Dkt. 1-2, p. 36-37).

After petitioner was found guilty, he filed a timely appeal to the Michigan Court of Appeals and moved for peremptory reversal of his conviction. His pleadings as of that date raised three issues including: (1) whether the Interstate Agreement on Detainers had been violated, (2) whether a "prejudiced juror" was allowed to remain on the jury, and (3) whether the trial judge had improperly

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

departed from the sentencing guidelines in imposing the sentence. After the Court of Appeals denied the motion for peremptory reversal petitioner raised three additional issues in a *pro se* submission to the court. These three additional issues were: (1) whether there was sufficient evidence for the jury to find him guilty, (2) whether the trial court improperly removed the only African-American juror selected to consider petitioner's case and whether the jury represented a fair cross-section of the community, and (3) whether petitioner was denied a fair trial based on the admission of a prejudicial document during the trial.

The Michigan Court of Appeals affirmed petitioner's conviction by unpublished opinion dated December 28, 2006. *People v. Wilbon*, COA No. 263153 (2006). (Dkt. 1, pp. 28-33). In affirming the conviction and sentence, the Michigan Court of Appeals found that there was no violation of the IAD because the adjournments were based on the unavailability of a material witness, which constitutes "good cause" for the adjournment, that petitioner's claims regarding a lack of trial court findings on the "good cause" issue were unavailing because petitioner had not requested any additional findings, and that no prejudice had been demonstrated. One judge on the Court of Appeals wrote a partially dissenting opinion stating she would have remanded the case for a more detailed finding regarding the "good cause" issue.

The Court of Appeals further concluded that there had been no error in the failure to exclude a prospective juror for cause because the juror had not made an "unequivocal remark" indicating he thought petitioner to be guilty and the juror agreed to base his decision on the evidence and applicable law. Additionally, the Court of Appeals noted the deference it gives to trial judges in such circumstances based on the "trial court's superior ability to assess the juror's demeanor regarding whether [the juror] could be impartial."

Regarding the sentencing issue, the Court of Appeals concluded that the trial judge did not err in departing from the sentencing guidelines where petitioner had 13 prior felony convictions, where some of those prior convictions were for crimes very similar to the present offense and where the present offense was committed shortly after petitioner had been released from prison. Regarding the sufficiency of the evidence issue, the Court of Appeals found that when the evidence is viewed "'in a light most favorable to the prosecution,'" a "'rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.'" The court identified the elements of the offense of conviction as including: (1) a false representation as to an existing fact, (2) knowledge by defendant of the falsity of the representation, (3) use of the false representation with an intent to deceive, and (4) detrimental reliance on the false representation by the victim. The court went on to say that there was evidence, despite petitioner's

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

denial, that he had deposited the altered check and withdrew over $20,000 that was not "covered by the unsubstantiated account" that would enable "a rational trier of fact to find that the essential elements of the crime were proven beyond a reasonable doubt."

Regarding the exclusion of the only African-American juror on the jury, the Court of Appeals determined that the exclusion of that juror was done by lot as part of the selection of alternate jurors at the conclusion of the proofs and, therefore, there was no evidence the African-American juror was singled out for exclusion based on race. The court also concluded that the claim of that African-Americans were under represented in the original jury array was defaulted because it had not been raised earlier and, even if considered under a plain error standard, there was no demonstrated basis for such a claim.

Regarding the claim of improper admission of a prejudicial document, the court found that petitioner had, during his testimony, accused Det. Peuler of being a member of an organized crime group known as "The Group" with which petitioner admitted to working. Det. Peuler testified on rebuttal that he did not belong to any such organization and had not heard of it until he reviewed a presentence report from petitioner's federal conviction in which "The Group" was mentioned without identifying other members of the organization. The court found that the admission of this testimony was not prejudicial to petitioner due to the fact

that petitioner had testified that he was affiliated with the organization and, thus, nothing additional came from Det. Peuler's reference to the contents of the presentence report.

Reconsideration of the decision of the Court of Appeals was sought by petitioner and denied on February 8, 2007. (Dkt. 1, p. 35). Petitioner's attempts to have the Michigan Supreme Court review his conviction were denied by order of the court dated June 26, 2007. *People v. Wilbon*, Michigan Supreme Court No. 133091 (2007).

## IV.    FEDERAL REVIEW

Petitioner filed the present petition under 28 U.S.C. § 2254, which is part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), on July 3, 2007, identifying eight claims of error on the part of the state court. (Dkt. 1). On January 25, 2008, an amended petition was filed (following the respondent's request for dismissal because the last two claims had not been exhausted in state court) and this document is the operative document relating to the claims raised by petitioner. (Dkt. 10). In his amended petition, six claims are raised: (1) petitioner's conviction should be vacated based on a violation of the Interstate Agreement on Detainers, (2) the trial court allowed a prejudiced juror to remain on the jury, (3) the trial court improperly departed from the sentencing guidelines, (4) there was insufficient evidence of petitioner's guilt, (5) because the trial court

improperly removed the only African-American juror from the jury, the trial jury did not represent a fair cross-section of the community due to the systematic exclusion of African-American individuals, and (6) the trial court erred in allowing the introduction of a highly prejudicial document and two defense witnesses were not allowed to testify who could have clarified the information in the "federal document."

A.    Standard of Review

Under the AEDPA, federal courts have limited authority to grant relief to a state prisoner. Where a state court has adjudicated the petitioner's claim on the merits, a federal court can only grant a writ of habeas corpus where the state's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "The [federal] court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id*. "An

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

*unreasonable* application of federal law is different from an *incorrect* application of federal law." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). The federal writ should not issue just because the "state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Rather, "the state court's application of clearly established federal law [must have been] objectively unreasonable." *Cone*, 535 U.S. at 694.

This Court must presume that state court factual determinations are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness is only overcome by clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Additionally, federal habeas review is barred where the state court finds that the petitioner defaulted the claim pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

B.     <u>Issues Raised By Petitioner</u>

1.     Interstate agreement on detainers

Petitioner was transferred from federal custody to state custody on February 25, 2004. An initial delay of the trial was the result of the agreement of the defense attorney. The period of delay was March 8, 2004, to May 6, 2004, the date

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

on which the preliminary examination occurred. (12/20/04 Tr., p. 9). According to the state court docket, on June 15, 2004, an order was entered scheduling the trial for August 25, 2004. On August 11, 2004, the August 25, 2004, trial date was adjourned and an order was entered scheduling the trial for November 17, 2004. On November 1, 2004, the trial was adjourned again until January 5, 2005.

Petitioner filed a motion to dismiss based on a claimed violation of the Interstate Agreement on Detainers, Mich. Comp. Laws § 780.601, on December 13, 2004. The hearing on the motion was held on December 20, 2004. In denying the motion, the trial judge noted the terms of the Michigan statute regarding the Interstate Agreement on Detainers, Mich. Comp. Laws § 780.601, and stated, accurately, that the statute required that a person transferred from another jurisdiction for prosecution must be brought to trial within 120 days of the transfer unless the trial is adjourned for "good cause." The statute actually states that "for good cause shown ... the court having jurisdiction of the matter may grant any necessary or reasonable continuance." Mich. Comp. Laws § 780.601(c). The trial judge concluded at the hearing on petitioner's motion to dismiss that the continuances granted in this case, both due to the unavailability of material witnesses, were "good cause" and he denied the motion. (12/20/04 Tr., pp. 9-13).

In its opinion affirming petitioner's conviction, the state Court of Appeals stated that "the unavailability of material witnesses is ordinarily good cause for an

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

adjournment" and that petitioner had failed to demonstrate that the adjournments were unreasonable. The court went on to state that petitioner had failed to preserve the "issues of unreasonableness and lack of 'good cause' by not creating a trial court record on these issues and that any deficiency in the record with respect to the basis of the decisions to adjourn the trial was, essentially, waived by petitioner's failure to "create a record that thoroughly explored the reasons for delay and, to refute reasonableness." The court also found that petitioner's generalized claims of prejudice were speculative and not persuasive particularly in light of the fact that petitioner "himself had ... requested a two-month delay of the preliminary examination."

While the state court decisions by the trial court and the court of appeals were based on the state statute, the IAD is also a federal law subject to federal construction. *Carchman v. Nash*, 473 U.S. 716, 719 (1985). However, federal habeas review of an alleged IAD violation [or any nonconstitutional, statutory violation] is limited to errors constituting a 'fundamental defect" resulting in a "complete miscarriage of justice" or "an omission inconsistent with rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 341 (1994); *Metheny v. Hamby*, 835 F.2d 672, 674 (6th Cir. 1987).[1] In the present case, the granting of

---

[1] Other Sixth Circuit authority would appear to say that a violation of the IAD is not cognizable on habeas review under any circumstances. *Browning v Foltz*, 837 F.2d 276, 283-84 (6th Cir. 1988). However, to the extent that the

adjournments based on the unavailability of material witnesses, even if one of

those witnesses was unavailable due to his daughter's wedding, as opposed to a

more compelling reason, is not a miscarriage of justice. The statutory standard is

"necessary or reasonable continuance" and petitioner has not shown that the

decision of the trial judge was neither necessary nor reasonable. Petitioner has not

shown any real prejudice from the delay in the trial and he had sought a two-month

delay in the proceedings himself. Additionally, rights created under the IAD are

nonjurisdictional and can be waived. *Kowalak v. United States*, 645 F.2d 534,

536-37 (6th Cir. 1981).

2.      The prejudiced juror claim

During jury selection, a prospective juror was called to sit in seat # 11

following the peremptory challenge by the defense of the previous occupant of that

seat. Defense counsel asked the prospective juror about the nature of his

employment prior to his retirement. (1/5/04 Tr., p. 117). The prosecutor then

asked a series of questions including a question regarding whether the juror could

be fair and impartial. The juror responded: "Well, I would hope so. Umn, I don't -

- I would think I could be." (*Id*., p. 118). After another question by the prosecutor

the juror stated: "Well, you were talking about prejudging, and it seems – to me

---

subsequently decided *Reed v. Farley*, 512 U.S. 339 (1994) establishes a different
standard for an IAD claim, the *Reed* standard controls.

when somebody has gone through as much as this has with all the investigation and all the people involved, that something must be wrong here.  That this person would be – get this far – I mean, the legal system is not that inept, is it?  I don't know."  *Id*.  The prosecutor then reminded the juror about the presumption of innocence and the burden of proof being on the government to which the juror responded: "I understand that, yes.  But I think that there is maybe some prejudice on my part that – that –."  *Id*.  The trial judge then interceded and commented on how the trial was a different stage of the process than what had previously taken place and that a juror should not be concerned about making a decision that was "at odds" with what had taken place before.  *Id.*, p. 119.  The juror then stated: "Well, that issue came up.  It was something that was talked about.  And, for me, I think that might be an issue."  *Id*.  The prosecutor then asked a few more questions ending with a question regarding the juror's ability to follow the Judge's instructions.  The juror responded to that question: "Well, I think I probably would be able to."  *Id.*, p. 120.  The prosecutor then asked a similar question including whether the juror could follow the judge's instructions and be fair and impartial to both sides of the case.  The juror responded: "I'll try."  The prosecutor then confirmed that the juror could base his decision on the facts and the law and the juror responded in the affirmative.  *Id*.  Without asking any further questions, defense counsel challenged the juror "for cause" and the judge denied the request.

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

The judge expressed the view that the juror's comments were "just a way of speaking," and he was "satisfied that the answer was appropriate, and at least as a challenge for cause [he did not feel] there [was] a basis for it." *Id.*, p. 121.

Petitioner raised this issue on direct appeal in state court and the Court of Appeals denied any relief stating that the "juror never made any unequivocal remark that he believed [petitioner] was guilty or that he could not be fair. He agreed that he could base his decision on the evidence and the law [and] [g]iving deference to the trial court's superior ability to assess the juror's demeanor regarding whether he could be impartial ... the court did not abuse its discretion in denying [petitioner's] challenge for cause." Petitioner contends that it was a violation of his Constitutional rights to be tried by a jury that includes a prejudiced juror and that the juror seated in seat # 11 was prejudiced against him.[2] Respondent contends that the record does not demonstrate that the juror was prejudiced, or biased, and therefore, there was no Constitutional violation.

The Sixth Circuit, in *Williams v. Bagley*, 380 F.3d 932, 943-44 (6th Cir. 2004), has identified the appropriate Constitutional standard for review of petitioner's claim of a prejudiced juror.

_____

[2]Petitioner also contends this violated his rights under the Michigan constitution as well as Michigan court rules but those claims are not cognizable in a habeas petition.

The Sixth Amendment, made applicable to the States through the Fourteenth Amendment, guarantees a criminal defendant a trial by an impartial jury. *Morgan v. Illinois*, 504 U.S. 719, 726-27, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). "In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). The presence of even a single biased juror deprives a defendant of his right to an impartial jury. *See Morgan*, 504 U.S. at 729, 112 S.Ct. 2222. "Qualified jurors need not, however, be totally ignorant of the facts and issues involved." *Murphy v Florida*, 421 U.S. 794, 799-800, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975).

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of the accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin*, 366 U.S. at 723, 81 S.Ct. 1639. When faced with an allegation of bias, then, the question becomes "did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Patton v. Yount*, 467 U.S. 1025, 1036 (1984). A trial court's finding of impartiality is a factual determination entitled to 28 U.S.C. 2254(e)'s presumption of correctness, *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003), and may "be overturned only for 'manifest error.' " *Hill v. Brigano*, 199 F.3d 833, 843 (6th Cir. 1999), quoting, *Patton*, 467 U.S. at 1031.

Additionally, the habeas court's review of a state court's finding as to a juror's impartiality "'is deferential, respecting the trial judge's proximity to the venire and the determinations of credibility and demeanor that *voir dire* involves.' *Wolfe v. Brigano*, 232 F.3d 499, 502 (6th Cir. 2000). 'The question is not whether the trial judge was wrong or right in his determination of impartiality, but merely whether his decision was 'fairly supported by the record.'" *Williams v. Bagley*, 380 F.3d at 953 (Citation omitted).

In the present case, the challenged juror expressed some concern about an important principle of law that he was uncomfortable with under the circumstances. The trial judge questioned the juror, reminding the juror of the importance of those principles and the juror eventually indicated that he would base his decision on the facts and the law. The Court of Appeals, in reviewing the situation on direct appeal, stated that the juror "never made an unequivocal remark that he believed [petitioner] was guilty or that he could not be fair." Based on this accurate observation of the record, the Court of Appeals concluded the trial judge did not abuse his discretion in denying petitioner's challenge for cause.

The test applied by the state court with respect to this claim was functionally the same as the Constitutional test that must be applied in this review. The decision of the trial judge, reviewed deferentially, to deny petitioner's motion to excuse the juror for cause, is supported by the record and clearly not a manifest

error. The state court decision on this issue is not an unreasonable application of federal law.

3. The sentencing error claim

Petitioner claims that the trial judge erred by departing from the state sentencing guidelines based on factors that were already included in the state guideline calculation. Thus, petitioner only challenges state statutory procedures relating to the sentence that was imposed. The Court of Appeals affirmed the sentence imposed finding that the trial judge had the authority to depart under the state statutory procedure and did not abuse his discretion in departing based on petitioners "extensive prior criminal record, the similarity of his repeated crimes, and the length of time between his supervised release and the onset of his renewed criminal conduct."

Respondent argues that this court should not review a claim of sentencing error where the claim is based on a violation of state law and not based on federal Constitutional law. "We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (Citations omitted). "To the extent that this argument is based upon an alleged violation of Michigan law, Petitioner has failed to state a claim upon which habeas relief may be granted." *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000).

Petitioner's claim of error, predicated only on a violation of state law, is not cognizable on habeas review.

In his "rebuttal," petitioner claims that the trial court's departure from the sentencing guidelines is a violation of his federal due process rights. (Dkt. 19, p. 2). Petitioner does not explain how this sentence violated his due process rights and does not provide any authority for his claims. It is clear from <u>Austin</u> that sentencing above the guideline range, even significantly above the guideline range, is not a due process violation. *Id.* at 301. "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Id.*, quoting from *Williams v. New York*, 337 U.S. 241, 245 (1949). Petitioner has not demonstrated that his sentence was contrary to federal law.

4.    The sufficiency of the evidence claim

Petitioner claims that he was convicted of the false pretenses over $20,000 charge without sufficient evidence to constitutionally support that conviction. Petitioner was convicted under Mich. Comp. Laws § 750.218(5)(a), which provides that a "person who, with the intent to defraud or cheat makes or uses a false pretense to ... [o]btain from a person any money ... or other valuable thing ... [and] the money ... or valuable thing ... has a value of $20,000.00 or more" is guilty of an offense. The elements of this offense are (1) a false representation as to an

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

existing fact, (2) knowledge by defendant of the falsity of the representation, (3) use of the false representation with an intent to deceive, and (4) detrimental reliance on the false representation by the victim. *People v. Wogaman*, 133 Mich. App. 823, 826 (1984).

Petitioner argues that the deficiency in the proofs relates to the elements of false representation and detrimental reliance by the victim. The state court addressed this issue on the merits and concluded that sufficient evidence of all the elements was presented. The state court applied state law, which provided that the evidence must be viewed in the light most favorable to the prosecution to determine if any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. In applying that standard, the state court ruled that the reviewing court must draw all reasonable inferences and resolve credibility conflicts in support of the jury's verdict. The state court pointed to certain facts in the record – including evidence that petitioner had deposited an altered check for $60,000.33 in an account that he had opened and then withdrew over $20,000 from the account that was "not covered by the unsubstantiated account." The Court noted that petitioner denied he had actually deposited the altered check in the account, but the Court found that there was sufficient evidence "[v]iewed in the light most favorable to the prosecution ... to enable a rational trier of fact to find that the essential elements of the crime were proven beyond a reasonable doubt."

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

Under the AEDPA, a federal court must determine if the state court ruling, on the merits of petitioner's claim, resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. *Mueller v. Bell*, 2008 WL 482278 (6th Cir. 2008).

United States Supreme Court precedent establishes that, to satisfy the due process required to support a criminal conviction, evidence must be presented that could convince a rational trier of fact beyond a reasonable doubt of the existence of every element of the offense. *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979). In order to determine whether this constitutional standard has been achieved, a reviewing court must consider the evidence in the light most favorable to the prosecution and decide whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Id.* at 319. While not referring directly to *Jackson v. Virginia*, the state court opinion articulated the *Jackson* standard for sufficiency of the evidence, referring to a Michigan Supreme Court case, *People v. Wolfe*, 440 Mich. 508, 515, amended 441 Mich. 1201 (1992), that relied on *Jackson* in describing the applicable sufficiency of the evidence standard for Michigan courts.

Petitioner appears to be arguing that the state appellate court made an unreasonable determination of the facts in light of the evidence presented at the trial and, therefore, his constitutional rights have been violated.[3] Petitioner refers to evidence at the trial suggesting that there was no evidence that he deposited the altered check and, thus, no evidence that he knowingly made a false representation.

Respondent has pointed out that this Court should not necessarily weigh the evidence in assessing its sufficiency, rather it must be viewed in the light most favorable to the prosecution, and has cited evidence in the record from which a rational trier of fact could arguably have properly inferred, beyond a reasonable doubt, that petitioner knowingly made a false representation. Those facts include (1) the person who presented the altered check had identification in petitioner's name, (2) the person presenting the altered check was described as a tall, thin black man with freckles, which was very similar to the description given by another teller, at a different branch, with respect to the person who withdrew $40,000, in the form of a cashier's check, and $2,000 in cash, from the account the altered check had been deposited into earlier that day, and the second teller identified petitioner as the person making the withdrawal. The second teller also indicated

_____

[3] Petitioner adopts, for the most part, his argument contained in his *pro se* Brief in support of application for leave to appeal, which he attached to his original petition. (Dkt. 1-2, pp. 18-20).

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

the person making the withdrawal, identified as petitioner, furnished identification in petitioner's name. Other evidence the trier of fact could have considered included: (1) the fact that the original unaltered check, in the amount of $33.03, was sent to petitioner; (2) large withdrawals were made over a short period of time, suggesting knowledge that the check was altered and that the money had to be withdrawn quickly before the credit union discovered the fraudulent nature of the check; (3) petitioner admitted to purchasing items with the money withdrawn from the account; (4) while not admitting to the police officer that he had deposited the check, petitioner admitted that he knew the check was altered and that he was present when the check was deposited into an account he had opened a short time before but declined to identify the person he said made the deposit (1/7/05 Tr., pp. 93-101); and (5) petitioner acknowledged that he had previously pled guilty to a criminal offense relating to the deposit of an altered check into a bank account and the withdrawal from that account of at least $38,000. (1/10/05 Tr., pp. 108-10).

While there may be some inconsistencies among the witnesses as to certain facts and there may be some facts that could give rise to more than one possible inference, the record as a whole indicates that there was evidence petitioner knowingly made a false pretense. "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any

such conflicts in favor of the prosecution, and must defer to that resolution."

*Jackson v. Virginia*, 443 U.S. at 326.

A rational trier of fact could very well have concluded, beyond a reasonable doubt, that the petitioner knowingly made a false pretense involving $20,000 or more and that the LSI credit union, in reliance on the representation that petitioner had approximately $60,000 in his back account, relied to its detriment by paying out money from the account.  It is a reasonable inference that the credit union would not have paid out the funds from the account, in the form of checks and cash, without reliance on the belief that $60,000 had been deposited into the account.  Based on the above analysis, the state court's ruling that there was sufficient evidence was not based on any unreasonable determination of the facts in light of the evidence presented in the trial court.  As a result, petitioner has not demonstrated that any rights he had under the constitution were violated within the parameters of the AEDPA.

        5.      Claims relating to juror discrimination

Petitioner also claims that the single African-American juror was excused at the conclusion of the trial, prior to deliberations.[4]  Citing *Batson v. Kentucky*, 476

_____

[4] The detailed argument in this regard was contained in petitioner's brief that was filed as part of his state court brief in support of application for leave to appeal, which petitioner adopted into the brief in support of the present petition. (Dkt. 1-3, pp. 21-22).

U.S. 79 (1986), petitioner claims that the juror was intentionally excluded.

Petitioner also claims that the jury did not represent a fair cross-section of the

community based on the "systematic" exclusion of African-Americans.

Respondent argues that the removal of the African-American juror was "by lot"

and therefore, there was nothing intentional about the exclusion of the juror.

Additionally, respondent contends that petitioner's claim regarding the systematic

exclusion of African-American jurors was not raised in the trial court and

therefore, petitioner is procedurally barred from raising that claim on habeas

review.

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

At the beginning of the jury selection process the trial judge, as part of his

instructions to the jury, stated:

> If you're all still here when it comes time to deliberate,
> we will excuse, by lot, two of you. Then we'll reduce the
> numbers down to 12. But then we know we've got the
> 12 that we need in order to resolve things.
> ...
> Frankly, we're gonna make the choice of alternates by
> lot, because doing it by lot, while utterly arbitrary, is at
> least not unfair. You may not like the luck of the draw,
> but the reality is that if it's purely arbitrary, no one can
> say somebody engineered it to their benefit, or the
> detriment of their opponent. That's just the way fate
> decided it was going to be.

(1/5/05 Tr., pp. 9-10). Just before the deliberations began, the trial judge stated:

"Now what we're gonna do right now is decide who those extra two jurors are.

We really don't know. It hasn't been arranged in advance." (1/11/05 Tr., p. 132).

After some comments about the benefits of having alternate jurors, the judge said:

"Miss White, who are the alternates?" (1/11/05 Tr., p. 133). The court clerk,

apparently Miss White, then read the names of the two alternate jurors who had

been selected. When the jury was excused from the courtroom defense counsel

objected to the fact that "the only black man sitting on the jury was also excused.

In response the trial judge stated:

> Well, it is true that the only African-American on the jury
> was excused, but he was excused purely by lot. That's
> not the least bit prohibited.

I would also note that since the issue has been raised in the original panel, we had 35 jurors, four of whom were African-American, which means we had a little bit more than 11 percent minority representation on the pool, which is darn close to the actual minority population of this entire county. At least four. There might have been a fifth one, I wasn't sure. But, I know there were four for sure.

(1/11/05 Tr., pp. 136-37).

The Michigan Court of Appeals considered petitioner's claim of intentional exclusion on direct appeal. That court found that the trial record clearly demonstrated that the exclusion of the lone African-American juror was by lot and not intentionally based on race. The Court of Appeals noted the *Batson* standard but found that there was simply no factual basis for petitioner's claim and therefore rejected it. The state court applied the correct federal standard for the claim made by petitioner and the decision to reject the claim for lack of factual support is not an unreasonable application of federal law.

Regarding petitioner's claim of systematic exclusion of African-Americans, the Court of Appeals noted that there was no contemporaneous objection during the trial and therefore the claim was not preserved. The court went on to review the claim based on a plain error standard and concluded petitioner had not substantiated the claim noting the trial judge stated on the record that the number

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

of African-Americans in the venire was higher than the percentage of minority population in the county.

Respondent contends that, based on the lack of an objection in the trial court, petitioner's claim regarding the under representation of African-American jurors is barred in this Court because there was an independent and adequate state procedural rule that was applied to deny relief in the state court. Respondent submits that, pursuant to state law applicable to petitioner's case, an objection was necessary to preserve an issue for appeal and that the authority relied on by petitioner regarding this point no longer applies.

Federal habeas review is barred where the state court finds that the petitioner defaulted the claim pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Federal habeas law clearly denies a petitioner the opportunity to have a claim considered in federal court where the petitioner has defaulted on that claim in state court and a state court procedural rule prevents the issue from being addressed on the merits in state appellate review. *Id.* Respondent points out, however, that, as of the date of petitioner's trial, Michigan law required that all claims, even constitutional ones, must be preserved by objection in the trial court

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

to be properly considered on the merits in the state appellate courts. *People v.*
*Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999). Additionally,
consideration of the claim under a plain error standard is the equivalent of
imposing a procedural bar to consideration of the claim on the merits for the
purpose of habeas review. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).
Petitioner has not claimed cause for the procedural default.

    6.  Claim relating to admission of evidence

  As noted earlier, part of the prosecution's proofs was the testimony of Det.
Peuler who testified that petitioner made certain admissions, following his arrest,
regarding the fraudulent conduct he was accused of committing. Part of the
defense strategy was to discredit Det. Peuler by attempting to prove he was
somehow involved in criminal conduct himself and was falsely accusing petitioner
of wrongdoing to cover-up his own criminal conduct. To that end, after the
government had rested, the defense sought to call two witnesses to testify that in
2000, following petitioner's indictment on bank fraud charges, petitioner made a
statement to law enforcement authorities in which he implicated others in a scheme
to traffic in drugs as well as other illegal activity. One of the proposed witnesses,
an FBI agent, was not available and it was not clear when she would be available
while the other witness, petitioner's defense attorney at the time of the statement,
was available and neither witness had been disclosed to the prosecution prior to

that day.  The prosecution objected to these witnesses being called without notice and the judge conducted a hearing with respect to the witnesses for the purpose of determining if they would be allowed to testify.

The judge asked defense counsel for a proffer regarding the anticipated testimony of the witnesses. (1/10/05 Tr., p. 23).  Defense counsel stated that the FBI agent was expected to testify that she conducted an interview of petitioner and that petitioner described drug trafficking activities taking place in the Kentwood area and petitioner had refused to identify one of the participants at that time. Petitioner, in his testimony, was apparently going to testify during the trial that the previously unidentified person was Det. Peuler.  (1/10/05 Tr., p. 25).  Defense counsel further stated that the defense attorney was expected to say that he had arranged for the proffer with the government but did not actually attend it. (1/10/05 Tr., p. 26).

The trial judge noted that the witnesses could only say that the meeting with the FBI agent had taken place and neither witness could testify that petitioner had actually identified Det. Peuler as being involved in drug trafficking activities in the past.  The court noted that the fact the meeting had taken place was not a contested issue.  (1/10/05 Tr., p. 28).  The trial judge ultimately denied the defense request to call these witnesses primarily based on the failure of the defense to disclose the names of the witnesses to the prosecution in a timely fashion as required by the

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

scheduling order previously entered by the court, but also because the proffered testimony was not "terribly relevant" and could potentially open up other issues that would not be relevant. (1/10/05 Tr., pp. 35-40).

Petitioner's testimony followed the trial judge's decision to not allow the testimony of the FBI agent and the former defense attorney. Petitioner testified that he had pleaded guilty to a federal fraud offense in 2000 that related to events that had occurred in 1999. Petitioner stated that his sentence had been reduced due to a statement he had given to law enforcement authorities and he was released from prison on December 26, 2003. (1/10/05 Tr., p. 47). Petitioner claimed that he had told the FBI about the drug trafficking activities of an acquaintance of his, which he did identify, and another person, that he did not identify. The person he declined to identify in 2000 was, according to him, Det. Peuler. (1/10/05 Tr., pp. 78-79). Petitioner testified that Det. Peuler provided quantities of cocaine to petitioner's acquaintance in petitioner's presence in the past. (1/10/05 Tr., p. 80). On cross-examination, petitioner admitted that he had personally been involved in this activity, through a criminal organization named "The Group" and had transported drugs and laundered money on behalf of the "The Group." Petitioner testified that Det. Peuler was the "head" of "The Group." (1/10/05 Tr., p. 113).

On rebuttal, Det. Peuler testified that the only place he had heard about "The Group," other than petitioner's testimony during the trial, was in a document

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

prepared by "somebody in the federal role or probation system documenting a history on Mr. Wilbon." (1/11/05 Tr., p.30). The defense raised a hearsay objection which the judge eventually overruled based in part on the subject matter being a "fair response" to the evidence put forth by the defense and in part on the testimony being foundational. *Id.* Det. Peuler was later asked if the document related "to the [petitioner] and his criminal wrongdoing in the bank fraud case" and he answered in the affirmative. *Id.* Defense counsel again objected arguing that the documents were not in evidence and Det. Peuler had not drafted them. (1/11/05 Tr. p. 31). The judge ruled "we're not getting into the substance of [the documents] yet [and just] because there's a document that exists and it makes some reference to something, we don't need any cross-examination of the author to deal with that." *Id.* The judge instructed the prosecutor to proceed with the questions but to not "cross" the line and get into the substance of the documents. *Id.* Det. Peuler subsequently stated that his name had not been included in this document that related, at least in part, to "The Group," but he could not remember if the name of petitioner's acquaintance was mentioned in the document. (1/11/05 Tr., p. 31). No further reference was made to the document in question.

Petitioner argued in his state court direct appeal that the trial court erred in declining to allow the defense to call the FBI agent and the former defense attorney as witnesses in the trial and that the trial court had erred in allowing the

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

prosecution to introduce a prejudicial document. Employing an abuse of discretion standard, the appellate court ruled that the witnesses had not been disclosed to the prosecution and would not have supported petitioner's claim that Det. Peuler had been involved in criminal activity because "the witness would merely have testified that defendant previously refused to reveal the identity of a man who allegedly was involved in the drug trade [and the testimony] would not have established the detective's identity as this unnamed person." The Court of Appeals concluded that the trial judge had not abused his discretion in denying the request to call these two witnesses.

Petitioner also claims error on the part of the trial judge for allowing the prosecution to introduce evidence of a "federal document." The "federal document" was the document Det. Peuler referred to when he was asked if he had ever heard of "The Group" before petitioner's testimony during the trial. Det. Peuler had stated he had first heard of "The Group" from reading this document that related to petitioner's criminal history. The Court of Appeals found no prejudice from this evidence that referred to this "federal document" because petitioner had earlier testified about his involvement in "The Group" during his testimony and the trial judge had prohibited the prosecutor from "delving into the substance of the federal document." (Dkt. 31, p. 31).

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

In petitioner's brief in support of application for leave to appeal that was filed in the Michigan Supreme Court, petitioner claimed prosecutorial misconduct regarding unspecified evidentiary issues, in violation of state law, and a denial of the Sixth Amendment right to"confront and cross-examine" adverse witnesses. (Dkt. 1.3, pp. 23-26).[5] These would not appear to be the claims made to the Michigan Court of Appeals in that the Court of Appeals did not address either a claim of prosecutorial misconduct or a Sixth Amendment violation in conjunction with these issues. If the claims were not presented to both the Court of Appeals and the Supreme Court they were not properly exhausted. *Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009). However, defendant did not move to dismiss this claim based on a failure to exhaust when such a request was made as to other claims in defendant's response to the petition and failing to do so could be viewed as a waiver of the failure to exhaust defense as to these particular claims. *Harris v. Lafler*, 553 F.3d 1028, 1032-33 (6th Cir. 2009). The exhaustion requirement is not jurisdictional. *Id.*

In the present petition, it is claimed that these errors denied petitioner a fair trial. The petition is somewhat confusing regarding the exact "federal document"

_____

[5] Petitioner's claim as outlined in the state court brief, in this regard, is incorporated into the present petition by the terms of the original petition. (Dkt. 1, pp. 15-16).

that petitioner is challenging.  In the petition,[6] the specific portion of the record petitioner claims was improperly admitted was not clearly identified, but the Michigan Court of Appeals reviewed the admission of Det. Peuler's testimony in which he referred to a "federal document" as the source of information regarding his awareness of "The Group."  In light of the fact that the Michigan Court of Appeals only reviewed the admission of that particular evidence, which is the only evidence that will be reviewed in this decision.

Respondent contends that any claimed violations of state law are not cognizable on federal habeas review and that any claims founded on the constitutional right to present a defense, under the Sixth Amendment, and the due process clause of the Fourteenth Amendment, lack merit because such a right is limited by reasonable restrictions of the kind that were applied in petitioner's trial based on the failure to provide notice that the witnesses would be called to testify and the lack of any demonstrable prejudice in that the proffered witnesses had no materially relevant testimony that would benefit petitioner.  (Dkt. 17, pp. 28-30). Respondent does not address the due process claim as to the admission of evidence and, with respect to the prosecutorial misconduct claim, respondent merely stated

---

[6] The more detailed statement of petitioner's claim was contained in his *pro se* brief in support of application for leave to appeal (Dkt. 1-2, pp. 23-26), which was incorporated into the petition by reference.

that the prosecutor did nothing wrong, without further elaboration or reference to authority.

The due process claim of petitioner, as it relates to the admission of evidence in his trial, is postured similarly to the circumstances of *Bey v Bagley*, 500 F.3d 514 (6th Cir. 2007) in the sense that the state court, on direct appeal, had only reviewed the challenge to the admission of evidence under the state rules but not under federal constitutional standards. The *Bey* court determined that since the state court had not considered the challenge in light of federal law, there was no issue regarding a state court's unreasonable application of federal law. The only remaining issue was, under habeas review, whether the state court decision was contrary to federal law. The *Bey* court further determined that the petitioner there had not identified any specific Supreme Court precedent suggesting, specifically, that a comparable admission of evidence (relating to similar acts evidence) violated his due process rights and, therefore, the more broadly based due process right, the fundamental right to a fair trial, was the proper standard to consider. In that regard, the court, citing *Dowling v. United States*, 493 U.S. 342, 352 (1990), indicated that the category of infractions that violated fundamental fairness was "very narrow." *Bey*, 500 F.3d at 523.

> Judges are not free, in defining "due process," to impose
> on law enforcement officials their personal and private
> notions of fairness and to disregard the limits that bind

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

> judges in their judicial function. They are to determine
> only whether the action complained of violates those
> fundamental conceptions of justice which lie at the base
> of our civil and political institutions, and which define
> the community's sense of fair play and decency.

*Dowling*, 493 U.S. at 352-53.

In the present case, the only reference to the "federal document" was as the source of the mention of "The Group" as the first occasion that Det. Peuler had heard of such an organization and the absence of Det. Peuler's name in the document in relation to the organization. The document itself was not admitted into evidence and no further indication of the contents of the document was testified to at the direction of the trial judge. This line of questioning was clearly prompted by and in response to petitioner's testimony that Det. Peuler was the "head" of the organization, of which petitioner admitted to belonging to during his testimony, which was part of the defense strategy to discredit the prior testimony of Det. Peuler. No unfair prejudice resulted to petitioner from this evidence because petitioner himself had already admitted to criminal participation in the activities of "The Group" and no additional criminal conduct was attributed to him by virtue of this evidence.

In a habeas review of the decisions of a state court, where the state court has not squarely addressed the claim advanced by the petitioner, it is permissible to examine whether the state court analysis was similar to the type of analysis that the

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

federal court must conduct. *Bey*, 500 F.3d at 521. Here, the Michigan Court of Appeals, in addressing the direct appeal claim of petitioner that the admission of this evidence violated the state rules, conducted a balancing review of the probative value of the evidence and any unfair prejudice inuring to petitioner. The court concluded that the evidence was offered in rebuttal of allegations made by petitioner in his testimony and the evidence was "hardly prejudicial" in light of petitioner's testimony that he was a "member" of "The Group." Such a balancing test is similar to the "fundamental fairness" analysis this court conducted. Where this similarity exists the state court decision is reviewed under a "modified AEDPA deference" standard. *Id*. at 520-21. Petitioner has not demonstrated that the admission of this evidence falls within the "very narrow" category of infractions that resulted in the violation of fundamental fairness and therefore there is no basis to find that the state court's decision affirming his conviction was contrary to federal law.

In light of the fact that the Michigan Court of Appeals did not address either the prosecutorial misconduct claim or the Sixth Amendment/Fourteenth Amendment claim, the only question regarding these claims is whether the state court decision was contrary to federal law. On a habeas review, the court considers claims of prosecutorial misconduct deferentially. *Gillard v. Mitchell*, 445 F3d 883, 897 (6th Cir. 2006). The correct inquiry is "whether the improper comments or

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

actions 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974). Petitioner claims that the conduct of the prosecutor in eliciting the testimony regarding the "federal document" was improper and prejudicial. However, having previously determined that the admission of this evidence was not a denial of due process under federal law, it logically follows that the conduct of the prosecutor in eliciting the evidence did not result in the denial of due process. With respect to this claim, petitioner has not demonstrated that a decision of the state court is contrary to federal law.

The remaining claim of petitioner is that the trial court's denial of his attempt to call two witnesses violated his rights under federal law.[7] A criminal defendant has rights to compulsory process arising under the Sixth Amendment and the due process clause of the Fourteenth Amendment. Those rights include the right to call witnesses that are "'material and favorable'" to the defense. *Wong v. Money*, 142 F.3d 313, 325 (6th Cir. 1998), quoting, *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1992). However, such rights are "'not unlimited [and are] subject to reasonable restrictions.'" *Id*. at 326, quoting, *United States v.*

---

[7] The basis of petitioner's claim regarding this issue is not perfectly clear in that this issue is merged with the claim regarding the admission of the "federal document." Respondent construed this claim as relating to petitioner's right to present a defense arising under the Sixth Amendment and the due process clause of the Fourteenth Amendment and it will be addressed here in that manner.

*Scheffer*, 523 U.S. 303, 308-09 (1998).  Evidentiary limitations imposed by a state court do not conflict with the right to present a defense "so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'"  *Id.*  The exclusion of evidence is "unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused."  *Id.*

The trial court excluded these two witnesses because the defense did not give timely notice of its intent to call the witnesses in violation of a court-imposed requirement that such notice be given.  In its ruling, the trial court noted that the proffered witnesses did not have much, if anything, of value to add to the defense because neither of the witnesses did little more than confirm a fact, a meeting with a government agent, that was not in dispute and additional evidence of the meeting may create confusion on the part of the jury.  Given the absence of materiality to the testimony of the witnesses, and the potential delay and confusion in the trial caused by the witnesses being called without pretrial notice, it cannot be said that the employment of the rule to exclude the witnesses was arbitrary or disproportionate.  Courts have a responsibility to ensure fairness to both sides of a trial and to make sure trials are conducted as efficiently as possible and this type of rule is neither arbitrary nor disproportionate to that end.  No "weighty interest" of petitioner was infringed on by this ruling in that petitioner was able to present his defense (discrediting the government witnesses) through his own testimony and

Report and Recommendation
28 U.S.C. § 2254 Petition
*Wilbon v. Romanowski*; Case No. 07-12780

did not suffer the loss of any meaningful evidence through the inability to present these two witnesses. Petitioner had a "fair opportunity" to present his defense even without those two witnesses. *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *Allen v. Morris*, 845 F.2d 610, 615 (6th Cir. 1988). Again, petitioner has not demonstrated that the decision of the state court was contrary to federal law.

## V.    RECOMMENDATION

Based on the above, the undersigned **RECOMMENDS** that the petition for writ of habeas corpus be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 20, 2010

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 20, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Andrew L. Shirvell</u>, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participant: <u>Louis Wilbon, # 162532, G. ROBERT COTTON CORRECTIONAL FACILITY, 3510 N. Elm Street, Jackson, MI 49201-8877</u>.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
